UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| CLARE LOCKE LLP,<br><br>　　　　　Petitioner,<br>　v.<br><br>KYTCH, INC.,<br><br>　　　　　Respondent. | Civil Action No. _____ |

**PETITION AND MOTION TO CONFIRM EMERGENCY ARBITRATION AWARD**

1.　Pursuant to 9 U.S.C. § 9, Petitioner Clare Locke LLP brings this petition and motion to confirm an emergency, interim arbitration award that preserves the status quo and protects Clare Locke's attorneys' liens on a multi-million-dollar settlement until Clare Locke's claim for attorneys' fees and costs owed by its former client, Kytch, Inc., can be arbitrated.

2.　Clare Locke is proud of the work it performed for Kytch, which is poised to settle claims that Clare Locke investigated, developed, and litigated on Kytch's behalf for three years. Kytch discharged Clare Locke in October 2023 and owes Clare Locke millions of dollars in attorneys' fees and costs that Clare Locke advanced on Kytch's behalf.  When Kytch would not respond to Clare Locke's invoices, Clare Locke filed attorneys' liens on Kytch's pending claims to ensure that the law firm would be paid its fees in quantum meruit, as required by Virginia law. Clare Locke also initiated an arbitration before the American Arbitration Association (AAA) to resolve the attorneys' fee dispute, in accordance with the parties' three written agreements.

3.　Shortly after Clare Locke filed its arbitration demand, Kytch began advising the courts overseeing its lawsuits—but not Clare Locke—that it had reached a tentative settlement with the defendants and was working to document that agreement.  When Clare Locke sought

transparency into the status of the settlement to ensure that its claim for attorneys' fees—which have been secured with valid attorneys' liens—would be recognized and any settlement proceeds from the now-defunct Kytch would be protected, Kytch demurred, obfuscated, and refused to put into an enforceable writing any such assurances.

4. Accordingly, Clare Locke sought interim, injunctive relief to maintain the status quo, to keep Kytch from settling out from under Clare Locke without paying what it owed, and to provide Clare Locke some transparency into the status of the settlement negotiations. Consistent with the AAA Commercial Arbitration Rules and Mediation Procedures, which govern the parties' arbitration, AAA appointed an Emergency Arbitrator, who convened two hearings and accepted written and oral submissions from both parties before issuing a Decision and Order on Claimant's Request for Emergency Injunctive Relief (the "Emergency Award") that largely granted Clare Locke's application.

5. Given Kytch's continued intransigence—it continues to attack the Emergency Award without basis and refuses to recognize the Emergency Arbitrator's authority—Clare Locke seeks to confirm that Emergency Award. Clare Locke is simultaneously continuing to arbitrate its dispute with Kytch, per the parties' agreement, in the ongoing AAA arbitration.

## THE PARTIES

6. Petitioner Clare Locke is a Virginia limited liability partnership with its principal place of business at 10 Prince Street, Alexandria, VA 22314. Thomas A. Clare and Elizabeth M. Locke, the law firm's founders and only equity partners, are citizens of the Commonwealth of Virginia. Clare Locke's non-equity partners are citizens of Florida, Maryland, Tennessee, Texas, and Virginia.

7. Defendant Kytch, Inc. is a Delaware corporation with its principal place of business in Alameda County, California.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the dispute is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of attorneys' fees, interest, and costs. As the Emergency Arbitrator recognized, Clare Locke incurred more than $7 million in attorneys' fees that it is seeking to recover from Kytch, and the merits arbitrator could (and should) award Clare Locke even more than $7 million if the arbitrator determines that the reasonable value of the firm's legal services in quantum meruit exceeds that amount. Additionally, Clare Locke seeks to recover on a breach of contract claim for hundreds of thousands of dollars of litigation expenses that Kytch was obligated to pay, but did not.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this district at Clare Locke's office in Alexandria, Virginia, which is where Kytch approached Clare Locke for the provision of legal services, where Clare Locke performed the majority of the legal services for Kytch, where Kytch three times entered into a contract for such services under Virginia law, where Kytch three times agreed to arbitrate any disputes with Clare Locke, and where Kytch communicated with Clare Locke. Further, pursuant to the parties' three agreements to arbitrate in Virginia, the AAA sited the arbitration in Virginia, the hearing before the Emergency Arbitrator that led to the award that Clare Locke seeks to confirm is therefore legally deemed to have been held in Virginia, and the arbitral award is legally deemed to have been entered in Virginia.

## FACTUAL ALLEGATIONS

**I.      The Clare Locke-Kytch Relationship**

10.     Clare Locke focuses its practice on bringing defamation actions on behalf of high-profile clients facing reputational attacks in the media.  Clare Locke represented Kytch for three years of hard-fought litigation in federal and state courts against major corporations represented by sophisticated counsel.  Starting in November 2020, after Kytch allegedly suffered existential harm from defamation, breach of contract, theft of trade secrets, and related torts, Clare Locke attorneys took up the fight for Kytch's survival, devoting more than 10,000 hours, more than $7 million of legal fees, and countless long days and late nights to investigating the case, filing claims, surviving motions to dismiss, taking extensive discovery, identifying experts, and filing a summary judgment motion.  It was an extraordinary litigation effort, especially for a boutique firm, and Clare Locke looked forward to securing a large verdict for Kytch and a contingency fee for itself either through settlement or at trial.

11.     Clare Locke and Kytch entered into three different engagement letters, all governed by Virginia law and calling for the mandatory arbitration of any disputes between them before AAA in Virginia.  The three engagement letters between Clare Locke and Kytch, attached in redacted form as Exhibits A through C, each require that "[a]ny controversy or claim arising out or of relating to [that] agreement or [Clare Locke's] representation of [Kytch] . . . shall be settled by arbitration in Virginia administered by the American Arbitration Association."  Ex. A at 4; Ex. B at 5–6; Ex. C at 6.[1]  It further provides that "[t]he designated arbitrator(s) shall have the authority to award any and all relief that would otherwise be available in a court of law, and judgment on any award may be entered in any court of competent jurisdiction."  Ex. A at 4; Ex.

---

[1] The documents and relevant procedural facts concerning the arbitration are referenced in the Declaration of C. Bryan Wilson, which is being filed contemporaneously with this Petition.

4

B at 5; Ex. C at 6.  Additionally, the agreement specifies that it "shall be governed by and interpreted in accordance with the laws of the Commonwealth of Virginia without regard to conflict of law principles."  Ex. A at 4; Ex. B at 5; Ex. C at 6.

12. Following its retention, Clare Locke aggressively litigated on Kytch's behalf in numerous forums.  Clare Locke ultimately spearheaded cases for Kytch in four courts, *Kytch, Inc. v. Gamble*, No. RG21099155 (Sup. Ct. Alameda Cnty., Cal.) (the "Alameda County Action"); *Kytch v. Taylor Commercial Foodservice, LLC*, No. 22-606 (D. Del.) (the "Delaware Action"); *Kytch v. Taylor Commercial Foodservice, LLC*, No. 23-1810 (3d Cir.); and *Kytch v. McDonald's Corp.*, No. 3:23-cv-01998-TSH (N.D. Cal.) (the "Northern District of California Action") (collectively, the "Kytch Litigation").

13. In October 2023, however, just a few short months ahead of the scheduled trial in the Alameda County Action, Kytch terminated Clare Locke suddenly and without cause, depriving Clare Locke of the contingency fee it had risked so much to earn.

14. Kytch selected Daniel Watkins and his new law firm Meier Watkins Phillips Pusch LLP (MWPP) to assume the role of lead counsel, preventing Clare Locke from recovering the contingency fees that it had worked toward tirelessly for three years.  MWPP had been formed by Mr. Watkins and three other former Clare Locke non-equity partners, who abruptly tendered their resignations from Clare Locke without warning on August 3, 2023 to launch their competing firm.  Despite switching law firms, Kytch is still using the same lawyers who used to work at Clare Locke, now practicing under the MWPP brand, to prosecute its lawsuits.  After his no-notice departure on August 3, 2023, Mr. Watkins and MWPP hired away from Clare Locke the other key members of the Kytch litigation team—associates Amy Roller, Hannah Menchel, and Mark Thomson—so they could continue working on the Kytch litigation at MWPP.  In this

way, Mr. Watkins arranged for Kytch to continue benefiting from the same litigation team that Clare Locke spent years recruiting, training, and developing, while attempting to eliminate Kytch's obligation to pay Clare Locke a contingency fee.

15. In these circumstances, both the Clare Locke-Kytch contract (on which Mr. Watkins had worked for Clare Locke as a Clare Locke partner) and Virginia common law entitle Clare Locke to a quantum meruit recovery reflecting the reasonable value of the legal services provided to Kytch. A client can select counsel of its choice, but it must pay its discharged attorneys the fair value of their services.

16. On October 9, 2023, just five days before terminating Clare Locke, and without informing Clare Locke, Kytch apparently arranged for litigation funding from a third party, which resulted in a UCC lien being filed on all of Kytch's assets. At that time, Clare Locke was still representing Kytch and was unaware of Kytch's plan to terminate the firm only five days later. In this way, Kytch arranged for a UCC lien to be placed on its assets before Clare Locke had the opportunity to file its own lien for attorneys' fees in November 2023 pursuant to Virginia Code Section 54.1-3932, the merits of which will be determined in the ongoing arbitration.

**II.      The Clare Locke-Kytch Arbitration**

17. Kytch still owes Clare Locke significant fees and expenses. In light of that fact, on March 7, 2024, Clare Locke initiated an arbitration with the American Arbitration Association pursuant to the parties' three engagement letters. Clare Locke served Kytch with its demand the same day in accordance with AAA rules.

18. On March 11, 2024, AAA confirmed receipt of Clare Locke's demand, assigned the matter AAA Case Number 01-24-0002-9516, and advised the parties that the AAA Commercial Rules would govern the proceeding, which would be sited in Virginia; that a

6

telephonic Administrative Conference was scheduled for March 21, 2024; and that Kytch's response was due no later than March 25, 2024.

### III. Kytch's Settlement Efforts Exclude Clare Locke, Prompting Clare Locke To Pursue Emergency Injunctive Relief

19. On March 14, 2024, however, Kytch's lawyer, Mr. Watkins, announced in the Northern District of California Action in a joint filing with the defendants that the parties to the Kytch Litigation had "tentatively reached an agreement for settlement of both the Alameda [County Action] and the N[orthern] D[istrict] of Cal[ifornia Action], which they are working to finalize." Kytch did not advise Clare Locke of this fact.

20. Then, on March 20, 2024, Clare Locke learned that the parties to the Alameda County Action may have reached a settlement when the court entered a Notice of Hearing for a Compliance Hearing re: Dismissal for April 25, 2024.

21. Upon independently learning of the putative settlement, Clare Locke sought assurances from Kytch that Clare Locke's attorneys' liens would be respected and the proceeds of any settlement would be safeguarded until the value of Clare Locke's claims had been finally adjudicated and paid. Kytch failed to provide any meaningful or enforceable assurances. Rather, Kytch objected to AAA's jurisdiction to resolve the very disputes that it had contractually agreed to resolve before AAA on three separate occasions.

22. Accordingly, on March 25, 2024, in accordance with AAA Commercial Rule 38, Clare Locke filed a Request For Appointment of an Emergency Arbitrator and For Emergency Injunctive Relief.

23. On March 26, 2024, AAA appointed Howard W. Schub as the Emergency Arbitrator. A genuine copy of the notice appointing Emergency Arbitrator Schub is attached hereto as Exhibit D.

24. No party objected to Emergency Arbitrator Schub's appointment by the AAA's deadline of March 26, 2024, and both Clare Locke and Kytch appeared before Emergency Arbitrator Schub in connection with Clare Locke's emergency application.

25. In particular, both Clare Locke and Kytch appeared through counsel for an initial scheduling conference with the Emergency Arbitrator on March 27, 2024, though Kytch's counsel hung up partway through the hearing after stating that AAA lacked jurisdiction to hear the dispute.

26. Following the conference, the Emergency Arbitrator issued a scheduling order setting a hearing on the emergency application for April 2, 2024, and inviting the parties to submit any further briefing no later than 5:00 PM on March 29, 2024.

27. Clare Locke timely submitted a supplemental brief in support of its application. Kytch chose not to do so by the March 29, 2024 deadline.

28. On April 2, 2024, the Emergency Arbitrator held a telephonic hearing at which both parties were represented through counsel. Shortly before the hearing began, Kytch submitted an untimely letter to AAA, which the Emergency Arbitrator nonetheless considered. During the hearing, both sides were permitted to argue their respective positions and answered questions from the Emergency Arbitrator. Kytch continued to object to AAA's authority to hear the dispute.

29. In addressing Clare Locke's application, the Emergency Arbitrator and AAA complied with the parties' arbitration agreements and the applicable AAA Commercial Rules in all respects.

**IV.  The Emergency Arbitrator Awards Clare Locke Emergency Injunctive Relief**

30. Following the April 2, 2024 hearing, the Emergency Arbitrator issued the Emergency Award, which AAA delivered to the parties the same day. A genuine copy of the

Emergency Award is attached hereto as Exhibit E, and a genuine copy of the email delivering the Emergency Award to the parties (without the attachment) is attached hereto as Exhibit F.  The Emergency Arbitrator granted in part and denied in part Clare Locke's application.

31. In the Emergency Award, the Emergency Arbitrator considered and rejected several jurisdictional and/or arbitrability objections that Kytch had raised.  In particular, the Emergency Arbitrator found that Kytch "has stated an objection to [the Emergency Arbitrator's] jurisdiction" but "has not explained the basis for its objection or cited to any facts or legal authority in support of its objection."  Emergency Award at 5.  "Nor does [Kytch] assert that it was not properly served with notice of these arbitration proceedings or [Clare Locke's] request for emergency relief."  Id.  After reviewing the relevant arbitration agreements and Clare Locke's claims, the Emergency Arbitrator decided to "overrul[e] [Kytch]'s objection to my jurisdiction and to consider the request for emergency relief."  Id. at 6.  The Emergency Arbitrator further found that California's Mandatory Fee Arbitration Act, which Kytch had belatedly invoked and claimed mandated a stay of the arbitration proceedings, did not apply to Clare Locke.  Id. at 6–8.  In particular, the Emergency Arbitrator found Kytch's "position regarding a stay of this arbitration to be unconvincing and unsupported."  Id. at 8.

32. On the merits of the application, the Emergency Arbitrator found that Clare Locke had "stated a *prima facie* claim for relief and demonstrated a likelihood of success" on its quantum meruit claim.  Emergency Award at 9.  The Emergency Arbitrator also found "there does not appear to be any dispute that settlements are in the works, that settlement proceeds will be available to [Kytch] under the settlements or that [Kytch] has not yet agreed to or submitted a stipulated order in the Kytch Litigation agreeing not to disburse any settlement funds.

9

Accordingly, there is a risk that [Clare Locke] will suffer irreparable harm absent injunctive relief." *Id.* (footnotes omitted).

33. Based on these findings and conclusions, the Emergency Award "direct[ed] Kytch to immediately provide [Clare Locke] with the Settlement Documents [as defined above] and, if not yet final, drafts or term sheets describing the material terms of the agreements; (ii) direct[ed] [Clare Locke] and its counsel to keep the Settlement Documents confidential and use them only as needed to resolve [Clare Locke]'s disputes with Kytch and related actors; and (iii) preliminarily enjoin[ed] Kytch and its officers, agents, servants, employees, attorneys, and other persons in active concert or participation with them from dismissing any of the cases in the Kytch Litigation and/or dispersing, encumbering, and/or dissipating any settlement funds received in the Alameda County Action, the Delaware Action or the Northern District of California Action from the date of this Decision and Order up to and until 45 days following [Clare Locke]'s receipt of the last of the Settlement Documents along with a certification under penalty of perjury from an officer of Kytch that all such documents in their complete, final form have been provided," and "(iv) awarding all costs associated with the application for emergency relief (including arbitration and arbitrator fees) in [Clare Locke]'s favor and against [Kytch]." Emergency Award at 10–11.

34. Following entry of the Emergency Award, Clare Locke sought Kytch's compliance with the Emergency Award, including its obligation to "immediately" provide Clare Locke the Settlement Documents. But Kytch has yet to produce any documents to Clare Locke. Instead, Kytch continues to assert baseless objections to the Emergency Award and refuses to acknowledge its validity or the Emergency Arbitrator's authority.

**LEGAL STANDARDS AND ARGUMENT**

35. Through the Federal Arbitration Act, Congress encouraged the resolution of disputes through arbitration. As part of this policy, "[t]he scope of judicial review of an arbitration award 'is among the narrowest known at law.'" *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 193 (4th Cir. 1998)) ("[T]o allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation."). Upon a motion to confirm an arbitration award, the Court's function "may vacate or modify an arbitration award only under the limited circumstances listed in the Federal Arbitration Act, 9 U.S.C. § 10–11, or under the common law if the award 'fails to draw its essence from the contract' or 'evidences a manifest disregard of the law.'" *Id.*; *see also Warfield v. Icon Advisers, Inc.*, 26 F.4th 666, 669 (4th Cir. 2022) ("Convincing a federal court to vacate an arbitral award is a herculean task").

36. The obligation to confirm awards extends to emergency interim awards like the one at issue here. *See Yahoo! Inc. v. Microsoft Corp.*, 983 F. Supp. 2d 310 (S.D.N.Y. 2013) (granting petition to confirm emergency arbitration award in light of "the time-sensitive nature of [the plaintiff's] compliance with the injunction"); *S. Seas Nav. Ltd. v. Petroleos Mexicanos*, 606 F. Supp. 692, 694 (S.D.N.Y. 1985) ("[I]f an arbitral award of equitable relief based upon a finding of irreparable harm is to have any meaning at all, the parties must be capable of enforcing or vacating it at the time it is made.").

37. By statute, the Court "must grant" an order confirming the award unless the respondent shows:

(1) [T]he award was procured by corruption, fraud, or undue means;

(2) [T]here was evident partiality or corruption in the arbitrators, or either of them;

(3) [T]he arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) [T]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §§ 9, 10.

38. The exclusive grounds for modification of an award are as follows:

(1) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(2) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

(3) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

39. None of the circumstances described in sections 10 or 11 of the FAA exist here.

40. Because all requirements for confirmation have been met, the Emergency Award should be confirmed. Given Kytch's refusal to acknowledge the validity of the Emergency Award or the arbitration proceeding itself, and the ongoing, imminent irreparable harm that Clare Locke faces from Kytch, confirmation of the Emergency Award is both necessary and appropriate.

**PRAYER FOR RELIEF**

**WHEREFORE**, Clare Locke respectfully requests that this Court CONFIRM the Emergency Award, enter judgment in favor of Clare Locke, and award such other relief as this Court deems just and proper.

Dated: April 4, 2024

Respectfully submitted,

 /s/ C. Bryan Wilson
William T. Burke (Va. Bar No. 39326)
C. Bryan Wilson (Va. Bar No. 68803)
Perry F. Austin (Va. Bar No. 93373)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Fax: (202) 434-5029
E-mail:  bwilson@wc.com; wburke@wc.com; paustin@wc.com

*Attorneys for Petitioner Clare Locke LLP*