**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| CLARE LOCKE LLP, | ) | |
| | ) | |
| *Petitioner*, | ) | **Case No. 1:24-cv-00545** |
| | ) | |
| v. | ) | |
| | ) | **RESPONDENT KYTCH, INC.'S** |
| KYTCH, INC., | ) | **OPPOSITION TO PETITION TO** |
| | ) | **CONFIRM INTERIM** |
| *Respondent*. | ) | **ARBITRAL AWARD** |
| | ) | |

## INTRODUCTION

This case arises from an April 2, 2024 emergency arbitration award, which was changed ten days later in a second award (the "Interim Awards"), granting Petitioner Clare Locke LLP's request for interim relief against its former client, Kytch, Inc. Petitioner filed arbitration claims after Kytch terminated Clare Locke for cause in the fall of 2023 because Kytch lost confidence in the law firm's ability to prosecute litigations (the "Kytch Litigations") on Kytch's behalf against McDonald's, Taylor Company, and others. Through the Interim Awards, Petitioner obtained a non-final ruling purportedly requiring Kytch and the defendants to refrain from dismissing the Kytch Litigations. The Interim Awards also direct Kytch to produce draft settlement agreements in violation of the mediation privilege.

The facts and circumstances giving rise to the Interim Awards, as set forth below, constitute blatant violations of the law that this Court must not countenance. Clare Locke's Petition should be denied, and the Interim Awards should be vacated, for four reasons. *First,* the Interim Awards are unenforceable because they are non-final and subject to further amendment. *Second,* the Interim Arbitrator[1] exceeded his powers by issuing orders that adversely affect third parties who never agreed

---

[1] Mr. Howard Schub served as the emergency, interim arbitrator ("Interim Arbitrator").

to arbitrate anything. ***Third,*** the Interim Awards cannot be enforced because they purport to require Kytch to violate the mediation privilege. ***Fourth,*** the Interim Awards grant a *de facto* lien to Clare Locke despite express language in the parties' contract permitting Clare Locke to assert a lien *only* if Kytch terminated the firm within 30 days of resolving the Kytch Litigations. But almost 200 days have passed since Clare Locke was fired and the litigations are ongoing.

Each of these reasons independently prevents the Interim Awards from being confirmed by this Court pursuant to 9 U.S.C. §§ 9-10. Accordingly, and as more fully set out below, the Petition should be denied with prejudice.

## FACTUAL BACKGROUND

Kytch retained Clare Locke in November 2020 in connection with its dispute against McDonald's, Taylor Company, TFGroup LLC, and J. Tyler Gamble (collectively the "Defendants"). (Jeremy O'Sullivan April 30, 2024 Decl.¶ 3 (hereinafter, "J. O'Sullivan Decl.").) Kytch ultimately filed lawsuits against Defendants and is currently litigating those cases in the Superior Court for Alameda County (Case No. RG21099155), the Northern District of California (Case No. 3:23-cv-01998), and the Third Circuit (Case No. 23-1810).

## I.        The Engagement Letters between Clare Locke and Kytch.

Between November 2020 and November 2021, Kytch executed three successive engagement letters with Clare Locke principals Tom Clare and Elizabeth "Libby" Locke. (J. O'Sullivan Decl. ¶ 4.) Consistent with controlling ethical rules governing lawyers' conduct, the letters state that Kytch was "free to terminate [the] representation at any time." *Id.* The first engagement letter—dated November 6, 2020—was for "pre-litigation defamation advice and counseling." (J. O'Sullivan Decl. ¶ 5.) The letter includes Clare Locke's standard hourly rates and the following "minimum fee payment" clause:

> The minimum fee payment for this matter is $30,000. This means that if the number of hours we spend on the engagement do not total $30,000 we will include an

adjustment to the invoice so the total legal fees for the matter equal the minimum fee.

(J. O'Sullivan Decl. ¶ 6.) This is not lawful.[2]

Mr. Clare, Ms. Locke, and Kytch signed the second engagement letter on April 28, 2021, shortly before Kytch filed suit against Taylor Company—the manufacturer of McDonald's soft-serve machines—in Alameda County, California. (J. O'Sullivan Decl. ¶ 7.) The second letter superseded the first, and Kytch agreed to pay Clare Locke "a $100,000 fixed fee" to prepare for and argue a preliminary injunction motion. (*Id.*) Clare Locke also agreed to provide a 62.5% discount on its rates for the Kytch Litigations. (*Id.*) In addition to these flat fee and hourly arrangements, Kytch agreed to pay up to 35% "of the gross amount of any settlement or judgment" that Clare Locke obtained on its behalf. (*Id.*)

The third engagement letter ("Engagement Letter") was signed on November 29, 2021, six months after the Alameda County litigation commenced. (J. O'Sullivan Decl. ¶ 8.) In this contract, Clare Locke agreed to provide a 70% discount on its hourly rates ($375 per hour for Tom Clare and Libby Locke, and $232.50 for Daniel Watkins). (*Id.*, Ex. A at 3.) The Engagement Letter also required Kytch to pay 35% of its recovery to Clare Locke and $275,000 in flat fees ($175,000 to cover past due legal fees, a $50,000 flat fee to draft complaints against Taylor and McDonald's, and a $50,000 flat fee to oppose dispositive motions in the Alameda County litigation). (*Id.*, Ex. A at 2.)

---

[2] According to Virginia's Standing Committee on Legal Ethics, "the concept of a [] minimum fee paid in advance for specific legal services is violative of the Disciplinary Rules" for three reasons: (1) it "compromises the client's unqualified right to terminate" the relationship; (2) if the client discharges the lawyer before the fee is earned, retaining the fee would violate the lawyer's responsibility to refund to a client any unearned fee; and (3) "a fee that is not earned is per se an unreasonable fee. Thus, the retention of an unearned non-refundable fee" is inconsistent with lawyers' ethical obligations. Legal Ethics Opinion 1606, available at https://www.vacle.org/opinions/1606.htm.

Clare Locke committed to send monthly invoices to Kytch with a statement of expenses and attorneys' fees.[3] (*Id.*, Ex. A at 3.)

Unlike the previous engagement letters, the November 2021 contract contained the following language:

> [I]f either party terminates this engagement more than 30 days before any settlement or judgment, you will be liable to pay our hourly fees in quantum meruit. The parties parties [sic] expressly agree that the hourly rates set forth in the "Fees and Expenses" paragraph are reasonable for purposes of any quantum meruit analysis.

(J. O'Sullivan Decl., Ex. A at 5.) ***Clare Locke agreed that Kytch would only be charged discounted rates in connection with the Kytch Litigations.*** The Engagement Letter also states that "if either party terminates the engagement within 30 days of any settlement or judgment" Clare Locke would be entitled to its contingency payment and to assert a lien against the settlement proceeds. (*Id.*)

## II.    Kytch Terminates Clare Locke for Cause in October 2023.

In August 2023, Daniel P. Watkins—who had spent the previous three years leading Kytch's litigation efforts—resigned from Clare Locke with three of his law partners and founded Meier Watkins Phillips Pusch LLP. (J. O'Sullivan Decl. ¶¶ 9-10; D. Watkins Decl. ¶ 3.) Kytch was represented by both Clare Locke and Mr. Watkins's new firm until the tech startup fired Clare Locke for cause on October 14, 2023. (*Id.*)

A few weeks before Kytch terminated Clare Locke, Ms. Locke suggested that Kytch "forego trial and bring in [her] husband Tom Clare to force a favorable settlement against the defendants." (J. O'Sullivan Decl., Ex. B at 6.) But Mr. Clare hadn't even appeared in the case. Kytch responded by informing Clare Locke that it believed this was just a tactic to "keep [Clare Locke's] predatory

---

[3] Clare Locke failed to do so over the next two years despite repeated requests from Kytch. (J. O'Sullivan Decl., Ex. B at 2-3.)

control over Kytch," and that it was unrealistic to expect a reasonable settlement from Defendants

because no key witnesses had been deposed. (*Id.*)

Kytch sent a letter to Clare Locke explaining why it lost confidence in Clare Locke, which is

attached as Exhibit B to Mr. O'Sullivan's Declaration and incorporated here by reference. The cover

email containing the October 14, 2023 termination letter appears below.



By this time, the relationship between lawyer and client had deteriorated beyond repair. (J.

O'Sullivan Decl. ¶ 10.) In its letter to Clare Locke, Kytch identified a discussion with Libby Locke

on July 27, 2023, as a prime example of the disconnect between the two parties. During that conversation, Ms. Locke informed Kytch that "Clare Locke was unable to continue to carry [] litigation expenses" and that Clare Locke was "not able to retain the experts [Kytch] needed" unless Kytch agreed to obtain litigation funding. (J. O'Sullivan Decl., Ex. B at 4.) This was a marked reversal from Ms. Locke's previous representations that Clare Locke would cover litigation expenses until the Kytch Litigations ended. As a result, Mr. O'Sullivan was furious and considered firing Clare Locke on the spot. (J. O'Sullivan Decl. ¶ 9.)

The letter describes another conversation from August 2023 in which Ms. Locke stated that she was "not willing to work with Daniel [Watkins] or his new firm under any circumstances," even though Mr. Watkins remained co-counsel of record in the Kytch Litigations. (J. O'Sullivan Decl., Ex. B at 5.) The October 14, 2023 letter also states that, without permission, Clare Locke "began canceling depositions and stopped authorizing any work [for Kytch] that required the expenditure of money," including obtaining out-of-state subpoenas for third party witnesses. (*Id.*)

Clare Locke withdrew from the Kytch Litigations on October 19, 2023, five days after Kytch terminated the law firm. Approximately one month later, Clare Locke sent invoices to Kytch spanning three years of services totaling almost $7,000,000. (J. O'Sullivan Decl. ¶ 10.) Notably, Clare Locke's invoices purport to charge Kytch hourly rates that are considerably higher than those contained in the Engagement Letter that the parties negotiated would be deemed reasonable in a future fee dispute such as this. The invoices Clare Locke provided also failed to honor the flat fee arrangements and the 70% discount in Clare Locke's hourly fees despite clear language in the Engagement Letter that "th[ose] discounts [] will be applied to [Clare Locke's] hourly rates." (J. O'Sullivan Decl., Ex. A at 3.)

At the end of November 2023, Clare Locke filed "Notice[s] of Claim of Lien for Attorney Fees" in each of the Kytch Litigations. [Dkt. 1-8 at 2.] This despite the fact that the Kytch Litigations

have not settled, and the November 29, 2021 Engagement Letter states that Clare Locke "may assert a lien" *only* if the Engagement Letter were terminated "within 30 days of any settlement or judgment." (J. O'Sullivan Decl., Ex. A at 5.)

**III.     The Parties to the Kytch Litigation Attend Mediation in March 2024.**

In the months after Mr. Watkins resigned from Clare Locke in August 2023, Mr. Watkins deposed dozens of witnesses across the country, the parties exchanged substantial written discovery and produced hundreds of thousands of pages of documents, and they filed and briefed several motions for summary judgment. (J. O'Sullivan Decl. ¶ 12.) As a result of these efforts, discovery in the Alameda County Action is practically complete. (Watkins Decl.)

Judge Jenna Whitman of the Alameda County Superior Court ordered the parties in the Alameda County litigation to complete mediation by March 19, 2024. (Watkins Decl. ¶ 6.) The parties complied with this court order and attended mediation with California mediator Hon. Louis Meisinger on March 7, 2024. Clare Locke initiated arbitration against Kytch that same day and served its demand on Kytch's counsel during the mediation. (J. O'Sullivan Decl. ¶ 13.)

After hours of negotiations, the mediator shared his proposal. One week later, the parties agreed, in principle, to settle the Kytch Litigations for a confidential sum. (*Id.*) The parties notified the courts overseeing the Kytch Litigations of this development, and they filed stipulations staying the actions based on the result of their mediation. [Dkt. 1, at 7.] As of the date of this filing, the parties are continuing to finalize settlement terms. (J. O'Sullivan Decl. ¶ 14.)

On March 20, 2024, Clare Locke sent a letter to the parties in the Kytch Litigations insisting that it have a seat at the table to discuss settlement and stating that it "object[ed] to any dismissal[s]" "or distribution of settlement funds" that occurred without its consent. (D. Watkins Decl., Ex. A at 2.) Clare Locke made these demands despite being terminated by Kytch months earlier. Counsel for Kytch responded to this letter by informing Clare Locke's counsel that the litigations had not settled,

that, upon settlement, Kytch would not disburse settlement funds in a manner inconsistent with Clare Locke's attorneys' lien, and that California's mediation privilege and settlement confidentiality rules prohibited Kytch from sharing any details of the potential settlement unless Defendants consented to such disclosure. (D. Watkins Decl. ¶ 8.) Kytch's counsel also informed Clare Locke— in no uncertain terms—that Clare Locke's communications threatened to jeopardize the settlement that the parties to the Kytch Litigations are, to this day, still negotiating. (D. Watkins Decl. ¶ 9.) Clare Locke did not heed these admonitions.

On March 21, 2024, Clare Locke sent a proposal to Kytch regarding the potential settlement funds that it said would "maintain the status quo" and "minimize litigation costs." (D. Watkins Decl. ¶ 10.) In its proposal, Clare Locke asked Kytch to agree that it will not distribute settlement proceeds until 45 days after the Kytch Litigations settle, and further proposed that the parties work together to identify suitable escrow options and reasonable disbursement terms during the pendency of Clare Locke's fee dispute with Kytch. (*Id.*) Kytch agreed to this proposal a few days later. (J. O'Sullivan Decl. ¶15.)

On March 25, 2024, Clare Locke filed a Notice of Objection to Dismissal in Light of Attorneys' Lien in the Northern District of California. (D. Watkins Decl., Ex. B.) In its papers, Clare Locke complains that it "was not consulted about any settlement" negotiations, and it insisted that the court "deny any request for dismissal or other settlement approval" until after "Clare Locke's attorneys' liens have been resolved." (*Id.* at 2-3.)

Kytch recently learned that Clare Locke has contacted the defendants to try to obtain confidential information about the potential settlement. (D. Watkins Decl. ¶ 16.) In response, Kytch warned Clare Locke, once again, that its continued interference put the settlement efforts in jeopardy. (*Id.*)

**IV.      The Underlying Arbitration Proceedings.**

On March 25, 2024, Clare Locke filed a request for interim, emergency relief with the AAA. [Dkt. 1 at 7.] AAA appointed Mr. Howard W. Schub as the Interim Arbitrator the following day, and he held a hearing on Clare Locke's requests on April 2, 2024. [*Id.* at 8.] Kytch objected to the AAA's jurisdiction over the dispute and noted that Kytch had agreed to Clare Locke's March 21, 2024 proposal a week earlier. [*Id.* at 7.] Nevertheless, the Interim Arbitrator issued an order requiring Kytch to "immediately provide [Clare Locke] with the Settlement Documents" and enjoining Kytch "and other persons in active concert or participation with [Kytch] from dismissing any of the cases in the Kytch Litigation[s] and or dispersing" settlement funds related to those cases. [*Id.* at 10.]

At the time, no Settlement Documents existed but Kytch sought and obtained permission from the Defendants in the Kytch Litigations to share with Clare Locke the monetary sum of the potential settlement and the terms of the mediator's confidential proposal from March 7, 2024. (D. Watkins Decl. ¶ 12.) To date, the Defendants have prohibited Kytch from disclosing the terms of any draft settlement agreements with Clare Locke before they are in final form. (D. Watkins Decl. ¶ 13.)

**V.      Clare Locke Filed Kytch's Confidential Information on the Public Docket and Shared the Information with a Journalist to Disparage Its Former Client.**

Clare Locke instituted this lawsuit on April 4, 2024, containing misstatements of fact and unredacted client confidences. In addition to falsely claiming that it had been terminated without cause, Clare Locke disclosed to a global audience (1) the amount of fees Clare Locke says Kytch owes; (2) Kytch's lack of financial resources; and (3) that Kytch has supposedly refused to pay Clare Locke. As an initial matter, Clare Locke grossly overstated the amount of fees it incurred to the tune of $5 million and Petitioner failed to mention the fact that Clare Locke's principal agreed not to collect expenses from Kytch until *after* the Kytch Litigations were resolved. (J. O'Sullivan Decl. ¶ 9.)

These unauthorized disclosures are inconsistent with Clare Locke's ethical obligations to Kytch as a former client. *See* D.C. Bar Ethics Opinion 379 (prohibiting lawyers from disclosing "information about the client's lack of resources, the client's past refusals to pay, or any other information gained in the professional relationship that would be embarrassing, or likely to be detrimental to the client."). Indeed, the law is clear, "[d]isclosures of client confidences can be made only to the minimum extent necessary . . . and even then protective orders and filings in camera or under seal should be used to the maximum extent possible to protect client confidential information from exposure to third parties without a need to know." *Id.*; VA. R. SUP. CT. 1.6 (same).

Adding insult to injury, neither Clare Locke nor its counsel notified Kytch that Clare Locke had publicized its former client's confidential information in the filing. Instead, a Bloomberg Law reporter informed Kytch about the suit and indicated that Clare Locke sent the filing to the outlet and provided the following statement that disparages both Kytch and its current counsel:

> Clare Locke's petition for confirmation of AAA's emergency injunction sets forth in detail the true motivation for the sudden departure of the firm's four former partners: to try to take for themselves a multi-million-dollar contingency-fee case.

(D. Watkins Decl. ¶ 14.) Despite contacting the media about its suit the same night that it was filed, Clare Locke waited four days to contact Kytch's counsel regarding service. (D. Watkins Decl. ¶ 15.) This conduct has irreparably harmed Kytch but Clare Locke, through counsel, has refused to take any steps to correct its conduct or otherwise reduce the harm to its former client.

## ARGUMENT

### I.     The Court Should Vacate the Interim Awards Because They Are Not Final.

As a threshold issue, district courts can only confirm arbitration decisions that involve a final award. *See* 9 U.S.C. § 10 (the district court "may make an order vacating the award" if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, ***final and definite award*** upon the subject matter submitted was not made."). The Fourth Circuit has explained that this "complete

arbitration rule" precludes federal courts from reviewing arbitral awards "until the arbitrator has decided all facets of the dispute." *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 815 F.3d 154, 160 (4th Cir. 2016). The purpose of this rule is to prevent piecemeal litigation and repeated appeals, all of which run counter to the well-established goal of judicial efficiency. *See First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*, No.23-CV-1, 2023 WL 6221771, at *4 (E.D. Va. Sept. 22, 2023) (internal citations omitted).

The record in this case demonstrates that the Interim Arbitrator's Interim Awards are non-final, and thus not subject to judicial confirmation. Setting aside the fact that Clare Locke requested interim relief in its application to the Interim Arbitrator, twelve days after filing this case, Clare Locke filed the second interim award that purportedly "amend[ed]" and "clarif[ied]" the Interim Arbitrator's April 2, 2024 interim award. The Interim Awards also expressly state that they are not final – which makes sense because the Interim Arbitrator declined to make any merits decisions concerning the disputes between Clare Locke and its former client, Kytch:

> To be clear, I am not making any finding that Claimant will succeed at a hearing after full discovery in proving its claim for the attorneys' fees it seeks or that Respondent will not be able to prove a defense that Claimant is owed nothing, less than it seeks, or owes some amount to Respondent under one or more counterclaims. At this time, on a limited factual record and in the context of an expedited request for emergency relief, it is not possible or appropriate to make such findings.

[Dkt. 1-8 at 9, n. 4.] By their own terms, the Interim Awards are not final awards subject to confirmation.

A plain reading of AAA's Commercial Arbitration Rules requires the same conclusion.[4] Rule 37—titled "Interim Measures"—empowers arbitrators to issue "interim award[s]," and Rule 38(f) explains that the parties can submit an "application to modify an interim award of emergency relief"

---

[4] AAA's Commercial Arbitration Rules and Mediation Procedures are available online at https://adr.org/sites/default/files/Commercial%20Rules.pdf.

to the emergency arbitrator before a panel is selected, and that the final arbitrator has authority to entertain such a request after they are empaneled. Thus, the arbitrator will reconsider the Interim Awards and adjudicate the merits of the parties' disputes (to the extent jurisdiction is upheld, which Kytch disputes). This Court should not confirm the Interim Arbitrator's Interim Awards.

II.     **Even If the Interim Awards Were Final—They Are Not—the Interim Arbitrator Exceeded His Powers Because the Interim Awards Purport to Adversely Affect the Rights of Third Parties.**

The Court should not confirm the Interim Awards for a second reason: they purport to block the Defendants in the Kytch litigations—none of whom has agreed to arbitration—from dismissing the Kytch Litigations or "dispersing, encumbering, and/or dissipating any settlement funds." [Dkt. 1-8 at 10-11.]

"It goes without saying that a contract cannot bind a non-party." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Arbitration agreements, therefore, are not binding on parties "not mentioned in the written agreement." *See* 4 Am. Jur. 2d Alternative Dispute Resolution § 62. That is because "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Courts have routinely held that arbitrators exceed their powers when they determine rights and obligations of individuals who are not parties to the arbitration proceedings. *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1287-88 (9th Cir. 2009); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 847 (6th Cir. 2003); *NCR Corp. v. Sac-Co.*, 43 F.3d 1076, 1080 (6th Cir. 1995); *Lumber Liquidators, Inc. v. Sullivan*, No. CV-10-11890, 2011 WL 5884252, at *3 (D. Mass. Sept. 27, 2011) (collecting cases from the United States Supreme Court and the Second, Sixth, Eighth, and Ninth Circuit Courts of Appeals).

The Interim Arbitrator lacks the power to compel Defendants in the Kytch Litigations to take (or refrain from taking) any action. The Court should, therefore, vacate the Interim Awards and the Interim Arbitrator's attempts to exceed his lawful authority.

**III.     The Interim Arbitrator Also Exceeded His Powers by Directing Kytch and Its Counsel to Produce Mediation Materials and Violate Black-Letter California Law.**

The Interim Arbitrator directed Kytch to produce to Clare Locke "Settlement Documents" and other materials that were prepared in connection with court-ordered mediation in California. But California's broad mediation privilege provides that "[n]o writing … that is prepared for the purpose of, in the course of, or pursuant to, a mediation is admissible or subject to discovery." CAL. EVID. CODE §1119(b). And that "[a]ll communications, negotiations, or settlement discussions . . . in the course of a mediation or mediation shall remain confidential." *Id.* at § 1119(c). Such mediation communications and writings remain "inadmissible, protected from disclosure, and confidential to the same extent after the mediation ends." CAL. EVID. CODE § 1126; see *Simmons v. Ghaderi*, 44 Cal. 4th 570, 580-583 (2008) (explaining that "judicially crafted exceptions to the mediation confidentiality are not appropriate" and that the privilege "is to be strictly enforced"). To avoid doubt: such mediation documents "shall not be compelled in any arbitration." *Id.* at § 1119(b).

The California Supreme Court has "repeatedly said that these [mediation] confidentiality provisions are clear and absolute." *Cassel v. Superior Ct.*, 51 Cal. 4th 113, 117 (Cal. 2011). The California Supreme "Court has repeatedly resisted attempts to narrow the scope of mediation confidentiality." *Wimsatt v. Superior* Ct., 152 Cal. App. 4th 137, 152 (2007). And the "Court has held that the mediation statutes are to be broadly construed to effectuate the legislative intent, even if there are conflicting public policies and even if the equities in a particular case suggest a contrary result." *Id.* at 142. Unless the parties to mediation consent to disclosure, these mediation confidentiality provisions "unqualifiedly bar disclosure of certain communications and writings"

unless there is "an express statutory exception." *Simmons v. Ghaderi*, 44 Cal. 4th 570, 583 (2008). None of the statutory exceptions apply here.

Faced with the explicit directive from the Interim Arbitrator to disclose privileged documents, Kytch asked the Defendants in the litigations for their consent to disclose to Clare Locke the amount of the proposed settlement and the terms of the mediator's proposal that the parties tentatively accepted. (D. Watkins Decl. ¶ 12.) The defendants acquiesced, and Kytch disclosed the amount of the potential settlement to Petitioner. (*Id.*) **However, counsel for Defendants expressly prohibited Kytch from sharing draft settlement agreements with Clare Locke.[5]** (D. Watkins Decl. ¶ 13.) As a result, Kytch has been presented with an untenable "Sophie's choice" between complying with the Interim Arbitrator's order—which would require Kytch to flout its confidentiality obligations—on the one hand and obeying its legal obligations under California's mediation privilege on the other. Kytch elected to follow the law.

By manifestly ignoring the requirements of California's mediation privilege, the Interim Arbitrator exceeded his authority. This Court should not confirm this disregard for the California statutes that bind Kytch's conduct in connection with the mandatory mediation that the parties to the Kytch Litigation attended.

**IV.     Clare Locke Cannot Assert a Valid Lien Because It Was Terminated for Cause More than 30 Days Before Settlement.**

The November 29, 2021 Engagement Letter identifies the condition precedent for Clare Locke to assert a lien against a settlement or judgment in the Kytch Litigations:

> If either party terminates this engagement within 30 days of any settlement or judgment, you agree that the Firm is entitled to its contingency portion of any settlement or judgment the fullest extent permitted by law and may assert a lien upon the proceeds of a recovery to the fullest extent permitted by law.

---

[5] There is no legitimate reason for Petitioner to see draft settlement agreements, particularly given the fact that Kytch has already agreed not to disburse settlement funds for at least 45 days after settlement or judgment.

(J. O'Sullivan Decl., Ex. A.) The parties plainly agreed that Clare Locke would be permitted to assert a lien *only* if the engagement ended within 30 days of settlement or judgment. Kytch terminated Clare Locke, for cause, on October 14, 2023, and sent Clare Locke a letter explaining the reasons for its decision to move on from the law firm.[6] J. O'Sullivan Decl., Ex. B. Almost 200 days have passed since Clare Locke was terminated, and the Kytch Litigations have not yet settled. Therefore, the November 29, 2021 Engagement Letter cannot provide a basis for the Interim Arbitrator's *de facto* lien against the potential settlement funds.

To the extent the Interim Arbitrator ruled that any *future* settlement should not be disbursed based on Virginia's charging lien statute (Virginia Code Section 54.1-3932), the Court should vacate the Interim Awards because they manifestly disregard the law. The rule in Virginia is straightforward: an attorney's lien comes about when the employment contract "between client and attorney" is formed, but it *"remains inchoate until judgment or recovery is obtained."* *Montavon v. United States*, 864 F. Supp. 519, 522 (E.D. Va. 1994). The lien is complete *only after* recovery and the amount of the lien has been established. *Id.*[7] Clare Locke has not identified a case applying Virginia's charging lien statute to freeze prospective funds in a potential settlement that has not yet been reached.

---

[6] "The discharge of the attorney by his client" cannot "constitute a breach of [] contract" because clients are free to terminate their lawyers at any time, for any reason. *Heinzman v. Fine, Fine, Legum & Fine*, 217 Va. 958, 963 (1977). The Supreme Court of Virginia has explained that when an attorney is fired *"without just cause,"* the discharged attorney "is entitled to a fee based upon quantum meruit" and "the lien granted by" Virginia Code Section 54.1-3932. *Id.* at 964. But this rule of recovery applies only when an attorney is discharged "without cause"—the negative implication being that an attorney forfeits any claim to a fee when validly discharged "for cause."

[7] Compounding this manifest error, the Interim Arbitrator did not even attempt to identify the appropriate amount of Clare Locke's lien. He instead issued an order that freezes the entire corpus of any future settlement in the Kytch Litigations. To the extent Clare Locke is entitled to a lien—it is not—it must be calculated using the 70% discount contemplated in the Engagement Letter. Kytch reserves all rights to challenge Clare Locke's entitlement to fees.

## CONCLUSION

Kytch respectfully requests the Court to dismiss Clare Locke's Petition with prejudice because the Interim Awards are not final and because the Interim Arbitrator manifestly disregarded the law and exceeded his authority. Alternatively, Kytch requests that the Court vacate and not enforce the Interim Awards for the same reasons.

Respectfully submitted,


/s/ *Daniel P. Watkins*

Daniel P. Watkins (VSB No. 84592)
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW, Suite 650
Washington, DC 20006
Telephone: (804) 426-9454
Daniel.Watkins@MWPP.com


*Attorneys for Respondent Kytch, Inc*

16

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing document was sent via electronic

mail on April 30, 2024, to the following:


William T. Burke
C. Bryan Wilson
Perry F. Austin
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
wburke@wc.com
bwilson@wc.com
paustin@wc.com

*Attorneys for Petitioner Clare Locke LLP*


By: /s/ *Daniel P. Watkins*
Daniel P. Watkins